IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES R. BLUE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-01549 |
| ) | |
| CHERRY LINDAMOOD, Warden, ) | Judge Trauger |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Petitioner James R. Blue, a state prisoner incarcerated at the Whiteville Correctional Facility in Hardeman County, Tennessee, filed a *pro se* petition under 28 U.S.C. § 2254 for the writ of habeas corpus challenging his 2012 conviction in the Criminal Court of Davidson County, Tennessee. (ECF No. 1.) The respondent filed an answer in opposition to the petition (ECF No. 20), along with a complete copy of the underlying state-court record (ECF No. 21). The petition is ripe for review, and this court has jurisdiction.

Upon consideration of the petition, the answer, and the underlying state-court record, the court finds for the reasons set forth herein that the petitioner is not entitled to relief on the grounds asserted. The court further finds that an evidentiary hearing is not necessary, *see Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (an evidentiary hearing is not required when the record conclusively shows that the petitioner is not entitled to relief). Blue's petition will be denied and this matter dismissed.

## I.    PROCEDURAL BACKGROUND

On February 22, 2012, the petitioner submitted a petition to enter a plea of guilty to one count of a three-count indictment (for sale of more than .5 grams of a Schedule II Controlled Substance). The plea agreement provided for the dismissal of the other two counts and a stipulated sentence of 20 years' incarceration to be served at 45% for parole-eligibility purposes. (ECF No. 21-1, at 13–17 (Plea Pet'n).) The plea petition was accepted by the Davidson County Criminal Court (*id.* at 18 (Order accepting plea)), and the petitioner was sentenced in accordance with the agreed sentence, meaning that he was classified as a Range III persistent offender. (*Id.* at 14 (Judgment).)

The petitioner did not pursue a direct appeal, but he filed a post-conviction petition in the state court on January 9, 2013. (ECF No. 21-1, at 19–35.) The trial court appointed counsel, who filed an amended petition. After conducting a hearing at which the petitioner and his trial attorney testified, the trial court entered an order denying the petition. (*Id.* at 43–47.) That decision was affirmed. *Blue v. State*, No. M2013-02251-CCA-R3-PC, 2014 WL 2592802 (Tenn. Ct. Crim. App. June 10, 2014).

Blue filed his § 2254 petition on or about July 18, 2014. The respondent apparently concedes that the petition is timely.

## II.    STATEMENT OF THE ISSUE

The petitioner raises two intertwined arguments in this Court: (1) that his entry of a plea was not truly knowing and voluntary because (2) his trial counsel was constitutionally ineffective for allowing him to plead as a Range III persistent offender when he actually should have been classified, based on his prior criminal history, as a Range II offender. (ECF No. 1, at 5.)

The petitioner raised the same claims in his post-conviction proceedings at both the trial and appellate levels.

## III.    RELEVANT FACTUAL BACKGROUND

The Tennessee Court of Criminal Appeals summarized the procedural and factual history of this case as follows:[1]

> The brief factual basis for the petitioner's conviction, as stated at the guilty plea hearing, is "this matter took place here in Davidson County on November 4th of 2010 where the [petitioner] sold a quantity of cocaine over. 5 grams to an undercover police officer inside Club Traks" . . . . The State filed a Notice of Enhanced Punishment in the case, which established the petitioner's status as a Range III persistent offender. The State relied upon five prior convictions which arose from two separate cases: 96-C-1691 and 96-C-1373. Case 96-C-1691 involved two felony convictions, and Case 96-C-1373 involved three felony convictions. The State subsequently offered and the petitioner accepted a plea agreement in which the petitioner pled guilty to the sale of .5 grams or more of a Schedule II controlled substance, and the remaining charges were dismissed. The agreement also provided for a sentence of twenty years in confinement as a Range III offender.

> At the guilty plea hearing, the trial court extensively covered the rights which the

---

[1] The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). The petitioner here does not contest the appellate court's statement of facts.

petitioner would be waiving should he choose to enter the guilty plea. Under oath, the petitioner acknowledged that he had read the plea petition and reviewed it with trial counsel, stating that he fully understood the contents of the agreement. The court reviewed the charges against the petitioner and noted the possible ranges of punishment for each crime should the petitioner choose to proceed to trial. The petitioner again acknowledged that he understood the charges and the possible sentences related to each of the separate charges. He testified that he understood that he was pleading guilty to one offense, with the others being dismissed, and that he understood the sentence which would be imposed pursuant to the plea agreement.

The petitioner stated on the record in the plea admission hearing that he had no complaints whatsoever with trial counsel's representation of him during the case. He related that he had an opportunity to discuss with trial counsel the facts and circumstances of the case, the applicable law, and the State's evidence against him. The petitioner testified that trial counsel had answered any questions he had concerning the case. The trial court accepted the guilty plea, and the petitioner began serving his sentence.

Thereafter, the petitioner filed a timely *pro se* petition for post-conviction relief alleging that his plea was not entered knowingly and voluntarily based upon the ineffective assistance of counsel. Following the appointment of counsel, an amended petition was filed. The main allegation of ineffective assistance of counsel, although others were mentioned in the petition, was that trial counsel failed to discover that the three convictions in Case 96-C-1373 were in "limbo" and therefore could not be used to enhance the petitioner's range. The petitioner contends that he, on the advice of trial counsel, actually accepted a plea agreement as a Range III offender when in reality, he only qualified as a Range II offender.

At the post-conviction hearing, the petitioner and trial counsel both offered testimony. . . .

. . . .

The petitioner testified that trial counsel brought him some of the discovery materials later in the representation. He claimed that he did not receive all of them until after he was in the Department of Correction. After he was incarcerated, the petitioner claimed that he hired a private investigator to work on his case. At some point following his conviction, the petitioner did receive all of the discovery materials, including the State's Notice of Enhanced Punishment. The notice listed a prior conviction in 2005 in Case 96-C-1691 for which the petitioner was not convicted. However, the petitioner was convicted in 1998 in that case of the charges listed. The State erred by listing the date of conviction of a co-defendant in the case. Regardless of that error, the petitioner did acknowledge that he had five prior convictions in two cases. However, he testified that, because of a technicality, he now believed that only two were valid convictions. Accordingly, he felt that trial counsel was ineffective for allowing him to accept a plea agreement as a Range III offender.

Trial counsel also testified at the hearing that he represented the petitioner from general sessions court until the completion of the case. . . .

. . . .

During the argument portion of the hearing, the State conceded that the petitioner was correct in that the enumerated 2005 conviction on the notice of enhancement was in error. However, it was not disputed that the petitioner did have five prior convictions in two separate cases. Counsel for the petitioner argued that only two of those convictions were valid and could be considered for range determination purposes.

To support his argument, the petitioner relied upon this court's opinion in his prior post-conviction case. In *James R. Blue v. State*, No. M2002-00383-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 289, at *1, 2003 WL 1715745 (Tenn. Crim. App. Apr. 1, 2003), this court noted that in Case 96-C-1373, the petitioner pled guilty to three Class B felony drug offenses. Pursuant to the agreement, the petitioner received three ten-year sentences, which were to be served concurrently. At the hearing, the petitioner requested that he be allowed to begin serving his sentence the following day. The trial court allowed this with the specific condition that, if the petitioner failed to report the following day, the trial court would run the sentences consecutively instead of currently as the plea agreement specified. The petitioner failed to report, and the trial court entered judgments of conviction reflecting consecutive sentencing. *Id.* at *3–4.

Afterwards, the petitioner filed a petition for post-conviction relief challenging the decision, but the post-conviction court denied relief. The petitioner then appealed to this court, and it was concluded that the change in the sentencing was erroneous. *Id.* at *17. This court reversed the change in sentences and remanded the case for entry of corrected judgments which reflected concurrent sentencing. *Id.* at *22. Apparently, the trial court failed to enter any corrected judgment forms. The petitioner contended, therefore, that the judgments, as entered, were invalid because they were in violation of this court's findings and, accordingly, could not be used to enhance his range. If those convictions are not considered, the petitioner actually qualifies only as a Range II offender.

After hearing the evidence presented and arguments of the parties, the post-conviction court entered a written order denying the petitioner relief. The petitioner has timely appealed that decision.

*Blue*, 2014 WL 2592802, at *1–4 (footnote omitted).

## IV.    STATE COURT'S RESOLUTION OF THE CLAIM

The Tennessee Court of Criminal Appeals framed the petitioner's claims as follows:

(1) [W]hether [the petitioner] qualifies as Range II or Range III offender and (2) whether trial counsel was ineffective for allowing the petitioner to accept a Range III plea agreement. The petitioner argues that he qualifies only as a Range II offender and that trial counsel should have advised him of this fact. Because trial counsel did not, the petitioner contends that his guilty plea was not entered knowingly and voluntarily.

*Id.* at *4.

In resolving the claims in favor of the state, the court ruled as follows:

In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. Indeed, a

court charged with determining whether . . . pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and

the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *Alford*, 400 U.S. at 31).

To succeed in a challenge for ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably-based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. This deference to the tactical decisions of trial counsel, however, is dependent upon a showing that the decisions were made after adequate preparation.

. . . .

In its order denying relief, the post-conviction court found that:

Petitioner's main argument that he had ineffective assistance of counsel is that he was incorrectly advised that he was a Range III offender with five prior felony convictions. . . .

However, the Court of Criminal Appeals has ruled that a court's failure to enter a final order is harmless if there is an oral pronouncement of the order from the bench. . . . In Case 96-C-1373, the Court of Criminal Appeals issued a ruling remanding the case to the trial court for entry of the amended judgments making the sentences run concurrently instead of two running consecutively. . . .

Additionally, inferior courts must abide by orders made from a superior court. . . . A trial court has no authority to refuse to obey an order by the appellate court on remand. The slightest deviation from this rigid rule would disrupt and destroy the sanctity of the judicial process. . . . There would be no finality or stability in the law and the court system would be chaotic in its operation and unstable and inconsistent in its decision. . . . The trial court in Case 96-C-1373 ha[d] no authority to ignore the order from the Court of Criminal Appeals ordering the entry of amended judgments in the case.

Since the Court of Criminal Appeals merely remanded the case for entry of the amended judgment[s] instead of reversing the convictions, the convictions are valid and are not affected by the trial court's failure to enter the amended judgments. Consequently, Petitioner has five prior felony convictions, thus, making him a Range III offender for sentencing purposes.

Again, on appeal, the petitioner limits his argument regarding ineffective assistance of counsel and the voluntariness of his guilty plea to his challenge of his status as a Range III offender. However, after reviewing the record, we find nothing in the record which preponderates against the post-conviction court's findings. The petitioner's attempt to circumvent his guilty plea by asserting a technical argument such as this is not

well taken. The petitioner was well aware of the number of prior convictions that he had amassed when he stood before the court and entered the plea of guilty.

 Initially, we note that the petitioner has actually failed to establish that the amended judgments of conviction were never entered. The exhibits portion of the record contains six judgments of conviction in Case number 96-C-1373. Three of those reflect concurrent sentences, the others reflect consecutive sentences. Each of the six judgments is dated September 24, 1998. We have no way of knowing which set of judgments were [sic] entered first. Specifically, with nothing more to go on than these forms, it is not sufficiently clear to establish that amended judgments of convictions were not entered and back-dated to the original entry date. It is the petitioner's burden to establish his entitlement to relief. Moreover, we would note that clearly the petitioner was not required to serve his three ten-year sentences in that case consecutively.

 We agree with the post-conviction court's conclusion that the petitioner is in fact a Range III offender. We also agree that if the judgments in question were not actually valid, he would qualify only as a Range II offender. However, that is not the case before us presently. This court, in Case number 96-C-1373, did not invalidate the convictions, it merely remanded for a change in sentencing, a change which incidently [sic] benefitted the petitioner greatly. The convictions themselves were never reversed. Basically, this court's ruling served only to reinstate the petitioner's original concurrent sentences. And while the trial court may have neglected to ensure that the amended judgments were entered, that in no way affects the validity of the actual convictions. Those convictions being valid mean [sic] that the petitioner is a Range III offender because he has five prior felony convictions on his record. Based upon that finding, there was no deficiency in trial counsel's performance for advising the petitioner to accept the agreement.

 . . . .

 Even had we found that deficiency was established, the petitioner would be challenged to establish the prejudice prong of his claim. Here, the petitioner was facing two serious felony charges, as well as a misdemeanor. In addition to the possible misdemeanor sentence, the petitioner faced two possible convictions and sentences of eight to thirty years each. The transcript of the plea hearing and trial counsel's testimony at the post-conviction hearing establish that the petitioner wanted to enter the plea. He was aware of the consequences and the possible sentences. Based upon the record and trial counsel's testimony relating to the State's case against the petitioner, it appears that if the petitioner had chosen to go to trial, he faced an almost certain conviction of the multiple charges. The petitioner in fact acknowledged that he did not really want to proceed to trial, he just wanted a shorter sentence than he agreed to accept. That does not entitle him to post-conviction relief.

 On the record before us, we can reach no other conclusion than that the petitioner entered his guilty plea knowingly and voluntarily. He stood before the trial court and stated his understanding of the agreement and his desire to enter the plea. The petitioner may not now disavow his sworn testimony.

*Id.* at *4–7 (some citations omitted).

## V. STANDARD OF REVIEW

 A federal district court will not entertain a petition for the writ of habeas corpus unless the

petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. §

2254(b)(1). A habeas petitioner bears the burden of demonstrating that he has properly and fully

exhausted his available state court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987) (citation omitted).

This court's review of the state court's resolution of the properly exhausted issues raised in a federal habeas petition under § 2254 is quite limited. First, this court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In other words, a federal court is bound by the state court's adjudication of the petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Further, this court must presume the correctness of state-court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [this Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (citation omitted).

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
>     . . . . [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11 (emphasis original).

With these principles in mind, the court will turn to the examination of the claims raised in Blue's petition for habeas relief.

## VI.    DISCUSSION

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that, in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment, a defendant must meet two requirements. "First, the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is *not* whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. ----, 131 S. Ct. 770, 785 (2011). As the Supreme Court clarified in *Harrington*,

This is different from asking whether defense counsel's performance fell below

> *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 131 S. Ct. at 786 (internal quotation marks and citation omitted).

In addressing the petitioner's claims for ineffective assistance of counsel in this case, the Tennessee Court of Criminal Appeals articulated and discussed at some length the standard for proving ineffective assistance of counsel as established by the Supreme Court in *Strickland.* Having articulated the appropriate standard, the court then addressed the petitioner's claims and concluded that the petitioner had failed to prove ineffective assistance of counsel based on the attorney's advising him that he was a Class III offender for sentencing purposes. The court concluded as a factual matter and based on state law that all five underlying convictions were valid and that the petitioner was properly classified as a Class III offender. As a result, the petitioner could not show that his attorney's advice was erroneous or that his plea was not knowing and voluntary. The court found that petitioner was unable to establish either that his counsel's performance was constitutionally defective or that he was prejudiced by any alleged error on the part of counsel.

The only question before this court is whether the Tennessee court's application of *Strickland* was unreasonable. For the reasons articulated by the Tennessee Court of Criminal Appeals, as set forth at length above, it clearly was not. The petitioner is not entitled to relief on the basis of the claims asserted in his petition in this court.

## VII.    CONCLUSION

For the reasons set forth herein, James R. Blue's petition under § 2254 will be denied and this matter dismissed with prejudice.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that

jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

The court finds that the petitioner has failed to make a substantial showing of the denial of a constitutional right and that his claims do not merit further review. The court will deny a COA.

An appropriate order is filed herewith.

_____

Aleta A. Trauger
United States District Judge